The STATE of Ohio, Appellee,

v.

WILES, Appellant.

[Cite as *State v. Wiles* (1998), 126 Ohio App.3d 71.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 97–P–0028.

Decided April 14, 1998.

72

*Victor V. Vigluicci,* Portage County Prosecuting Attorney, and *Thomas R. Buchanan,* Assistant Prosecuting Attorney, for appellee.

*David H. Bodiker,* Ohio Public Defender, *Laurence E. Komp* and *William S. Lazarow,* Assistant Public Defenders, for appellant.

---

NADER, Judge.

This is an appeal from the judgment of the Portage County Court of Common Pleas dismissing a petition for postconviction relief without an evidentiary hearing.

## I. PROCEDURAL HISTORY

Defendant-appellant, Mark Wayne Wiles, was convicted of felony murder by a three-judge panel of the Portage County Court of Common Pleas and was subsequently sentenced to death. We affirmed the conviction and sentence in *State v. Wiles* (June 3, 1988), Portage App. No. 1675, unreported, 1988 WL 59838. Upon further review as of right, the Supreme Court of Ohio affirmed our judgment, *State v. Wiles* (1991), 59 Ohio St.3d 71, 571 N.E.2d 97, and the Supreme Court of the United States denied certiorari, *Wiles v. Ohio* (1992), 506 U.S. 832, 113 S.Ct. 99, 121 L.Ed.2d 59.

On September 20, 1996, appellant filed a petition for postconviction relief pursuant to R.C. 2953.21, asserting twenty-two claims that his constitutional rights had been violated. The petition was supported by numerous affidavits and exhibits. Appellant argued, *inter alia*, that his trial counsel were ineffective (fourth, fifth, ninth, tenth, eleventh, and sixteenth claims), that his appellate counsel were ineffective before the Supreme Court (thirteenth claim), that the Portage County Prosecutor's Office interfered with his attempts under R.C. 149.43 to gather information necessary to support this petition (third claim), and that there was a conflict of interest when one of his defense attorneys, James Aylward, went to work for the prosecutor's office in 1989 while his case was on direct review in the Supreme Court, and that said conflict of interest raises an appearance of impropriety in the direct appeal that entitles appellant to a new trial (second claim).

Each claim contained a separate request that the court allow discovery to more fully develop the merits.

On December 10, 1996, eighty-one days later, the state filed a motion for a ruling under R.C. 2953.21(C) and/or, in the alternative, a motion for summary judgment under R.C. 2953.21(D).

On January 13, 1997, appellant filed a motion to strike the state's motion on procedural grounds. He argued that, according to R.C. 2953.21(D), the state had only ten days to respond to his petition by answer or motion and that the state's motion was filed seventy-one days out of rule. Also, appellant alleged that the copy of the December 10 motion he received was incomplete and asked the court to order the state to serve upon him a complete copy of the motion. Further, appellant requested a reasonable amount of time to respond to the December 10 motion if the court overruled his motion to strike.

Also on January 13, 1997, appellant filed a motion to disqualify the Portage County Prosecutor's Office from the present postconviction proceedings and a motion to appoint a special prosecutor to handle the postconviction matter. This motion asserted the same alleged conflict of interest that was raised in the second

claim for relief in the petition—the conflict of interest in 1989. In the motion, however, appellant requested a different remedy. He asked the trial court to disqualify the prosecutor's office from the postconviction proceedings in 1997, even though by that time attorney Aylward had left the state's employ and had returned to work for the Portage County Public Defender.

On January 29, 1997, the state filed various motions. First, it filed a motion to supplement its December 10 filing with two pages of briefing allegedly omitted due to a copying error. Second, it moved for leave to file instanter a complete copy of its earlier motion for a ruling or for summary judgment. Third, the state resubmitted its December 10 motion, supposedly with the additional two pages of briefing. This mooted appellant's motion for an order to the state to serve him with a complete copy of its response. The assistant prosecutor wrongly served these motions on the Portage County Public Defender.

The assistant public defender in Columbus received a copy of the January 29 motions on February 3, 1997. On February 6, 1997, appellant filed a memorandum in opposition to the state's motion for leave to plead instanter, arguing that the motions of December 10 and January 29 were both filed late and should be stricken. Alternatively, appellant repeated his request for a reasonable time within which to respond to the motions if the court overruled his motions to strike.

The trial court issued a judgment entry on February 18, 1997, summarily dismissing the petition without an evidentiary hearing. The entry contains findings of fact describing the events leading up to the murder. Its conclusions of law state in full:

"The Court's review of the Petitions, Defendant's affidavit, indictment, journal entries, journalized records, and all the other files and records pertaining to the proceedings reveals no incompetency or ineffectiveness of trial counsel sufficient to warrant vacating or setting aside Defendant's sentence.

"Defendant's claims are vague, speculative and unaccompanied by specific facts. Thus, the pleading of mere speculation or unsubstantiated allegations does not entitle Defendant to relief. * * * In addition, the majority of Defendant's claims were or should have been addressed on direct appeal and therefore are barred by the doctrine of res judicata. * * *

"With respect to Defendant's claims that his appellate counsel [were] ineffective, such claims are not cognizable in postconviction proceedings. * * *

"With respect to Defendant's request that he have access to review the records maintained by the Portage County Sheriff's Department, such a claim is not appropriate in a postconviction action. * * *

"Nothing offered by Defendant or reviewed by this Court warrants the relief sought here, and therefore Defendant is not entitled to the relief he seeks.

"IT IS THEREFORE ORDERED that Defendant's petition styled 'Petition to Vacate or Set Aside Judgment and/or Sentence Pursuant to R.C. 2953.21' is dismissed without hearing." (Citations omitted.)

The entry does not expressly rule upon the following motions: (1) appellant's motions for discovery contained in the petition[1]; (2) the state's December 10, 1996 motion for a ruling and/or for summary judgment; (3) appellant's January 13, 1997 motion to strike the state's response; (4) appellant's December 13, 1997 motion for an extension of time to reply to the state's response; (5) appellant's January 13, 1997 motion to disqualify the entire prosecutor's office and for the appointment of a special prosecutor; (6) the state's January 29, 1997 motion to plead instanter; (7) the state's January 29, 1997 motion to supplement the December 10 filing with the two additional pages of briefing; (8) appellant's memorandum in opposition to the state's motion for leave to plead instanter; (9) appellant's renewed motion to strike the state's untimely filings; or (10) appellant's renewed motion for an extension of time in which to reply. We presume that these were overruled. *State v. Sinito* (Aug. 29, 1997), Trumbull App. No. 96–T–5532, unreported, at 5, fn. 2.

## II. ASSIGNMENTS OF ERROR

Appellant timely appealed, asserting the following as error:

"1. The trial court erred in denying appellant's motion to strike the state's untimely filing.

"2. The trial court erred in granting [the state]'s motion for summary judgment without giving appellant an opportunity to respond.

"3. The trial court erred in issuing insufficient findings of fact and conclusions of law in regard to appellant's petition for postconviction relief.

"4. The trial court erred in denying appellant's motion to disqualify the Portage County Prosecutor's Office when an actual conflict [of interest] exists.

"5. Ohio's post-conviction process is not an adequate and corrective process."

The fifth assignment has three parts argued within four subsections. In the first subsection and in most of the second subsection, appellant argues that "[t]he

---

**1.** We interpret the court's judgment entry where the judge discusses appellant's "request that he have access to review the records maintained by the Portage County Sheriff's Department" as addressing the merits of the third claim for relief, which alleged that appellant tried to access these documents before the petition was filed. We do not understand this portion of the judgment entry to address appellant's contemporaneous motion for post-filing discovery.

postconviction process in Ohio is a sham procedure." (The "first part" of the fifth assignment.) In the remaining portion of the second subsection, appellant argues that the trial court should have allowed him to conduct post-filing discovery. (The "second part" of the fifth assignment.) In the third and fourth subsections, appellant essentially challenges the court's application of *res judicata* to his claims. (The "third part" of the fifth assignment.)

The last two assignments of error state:

"6. The trial court erred in granting the [state's] summary judgment motion.

"7. The trial court erred in denying the merits of appellant's post-conviction petition."

### A. Unanswered Motions

Several assignments of error deal with the court's treatment of the post-petition motions that were not expressly ruled upon. We will address these assignments first.

In the first assignment of error, appellant argues that the court should have granted his motion to strike the state's December 10 and/or January 29 response to his petition because these were filed beyond the ten-day limit set forth in R.C. 2953.21(D). That part of the argument relating to the January 29 motion is moot because the court impliedly overruled the state's motion to plead instanter. If the court considered any briefing by the state, it would have been the December 10 filing.

R.C. 2953.21(D) states:

"Within ten days after the docketing of the petition, or within any further time that the court may fix for good cause shown, the prosecuting attorney shall respond by answer or motion."

The state replies to the first assigned error by arguing that the ten-day time limit in R.C. 2953.21(D) is directory, not mandatory, citing *State v. Sklenar* (1991), 71 Ohio App.3d 444, 594 N.E.2d 88; *State v. Roberts* (1991), 66 Ohio App.3d 654, 585 N.E.2d 934; and *State v. Binns* (Mar. 10, 1988), Franklin App. No. 87AP–241, unreported, 1988 WL 29527. But those cases stand for the proposition that, although the statute says that the state "*shall* respond" (emphasis added), the state need not actually respond if it decides not to do so.

 If the state deigns to respond at all, it must do so before the prescribed deadline or within any further time as may be affixed by the court. The state did not file its response within ten days after the petition was docketed, nor did it obtain leave of court to file its response seventy-one days out of rule. According-

ly, the response was untimely, and the trial court erred in failing to grant appellant's motion to strike.

The error is harmless, however. It is well settled that, regardless of whether the state responds to a petition for postconviction relief, R.C. 2953.21(C) requires the court to *sua sponte* analyze the petition.[2] Thus, the court was authorized to examine the merits of appellant's petition to determine whether an evidentiary hearing was necessary, but it should not have considered the state's December 10 motion.

Absent indications in the record to the contrary, we presume the regularity of the proceedings and that the court did not, in fact, consider the motion. The record in this case corroborates that presumption. The preamble to the court's judgment entry states: "This matter is before the Court upon Defendant's 'Petition to Vacate or Set Aside Judgment and/or Sentence Pursuant to R.C. 2953.21' and request for an evidentiary hearing[,]" not the state's motion for a ruling or for summary judgment. Also, the court entered a judgment summarily dismissing the petition as would be the result upon *sua sponte* review of the petition under R.C. 2953.21(C). There is nothing in the judgment suggesting that the trial court used the state's legal theories or research.

Since the record does not rebut the presumption that the court ignored the state's untimely response, appellant was not prejudiced by the court's refusal to strike it. See *State v. Williams* (Nov. 24, 1993), Cuyahoga App. No. 64151, unreported, 1993 WL 489748, at *3; *State v. Sheline* (Aug. 27, 1987), Franklin App. No. 87AP–204, unreported, 1987 WL 16169, at *2.

Likewise, the second assignment of error, in which appellant argues that the trial court erred in overruling his motion for a reasonable opportunity to respond to the December 10 motion, lacks merit. Appellant was not prejudiced when he was not afforded an opportunity to respond to an untimely motion that the court did not consider anyway. See *State v. Spisak* (Nov. 21, 1996), Cuyahoga App. No. 70254, unreported, 1996 WL 673983, discretionary appeal not allowed in (1997), 78 Ohio St.3d 1452, 677 N.E.2d 813; *State v. Murphy* (May 12, 1995), Marion App. No. 9–94–52, unreported, 1995 WL 275766; *State v. Miller* (Nov. 10, 1994), Cuyahoga App. No. 67388, unreported, 1994 WL 631209.

This analysis also disposes of the sixth assignment of error, in which appellant argues that the trial court incorrectly granted the state's December 10 motion for summary judgment under R.C. 2953.21(D) because it was deficient

---

2. See, *e.g.*, *State ex rel. Manning v. Montgomery* (1988), 39 Ohio St.3d 140, 529 N.E.2d 935; *State v. Darden* (1989), 64 Ohio App.3d 691, 693, 582 N.E.2d 1065, 1066–1067; *State v. Jordan* (Aug. 11, 1989), Trumbull App. Nos. 3893 and 3972, unreported, 1989 WL 92101.

under *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. The court did not consider that motion, so its legal sufficiency is irrelevant.

For these reasons, the first, second, and sixth assignments of error are overruled.

In the second part of the fifth assignment of error, appellant argues that the court erred in impliedly overruling his requests for discovery as to each of the twenty-two claims in the petition. Whether discovery may be had on a postconviction claim is a matter committed to the discretion of the trial court. *State v. Smith* (1986), 30 Ohio App.3d 138, 30 OBR 256, 506 N.E.2d 1205. Nothing in the record suggests that the court abused that discretion.

## B. The Judgment Entry

Some assignments of error deal with the trial court's February 18, 1997 judgment entry. We will address these next.

Appellant argues in his third assignment of error that the trial court's findings of fact and conclusions of law are insufficient because (1) the findings focus on irrelevant matters from the underlying murder case, not on the events relating to the allegations in the postconviction petition and (2) the court did not address each of his twenty-two claims and did not identify the portions of the record establishing the *res judicata* bar as are required by *State v. Lester* (1975), 41 Ohio St.2d 51, 70 O.O.2d 150, 322 N.E.2d 656, and paragraph three of the syllabus of *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104.

R.C. 2953.21(C) provides that the trial court, upon summarily dismissing a petition for postconviction relief, must make and file findings of fact and conclusions of law. Several important policy considerations underlie the rule. First, findings and conclusions serve " 'to apprise [the] petitioner of the grounds for the judgment * * *' *Jones v. State* (1966), 8 Ohio St.2d 21, 22 [37 O.O.2d 357, 358, 222 N.E.2d 313, 314]. The existence of findings and conclusions are essential in order to prosecute an appeal. Without them, a petitioner knows no more than he lost and hence is effectively precluded from making a reasoned appeal." *State v. Mapson* (1982), 1 Ohio St.3d 217, 219, 1 OBR 240, 242, 438 N.E.2d 910, 912. Second, findings and conclusions serve the related purpose of apprising the appellate court of the reasons for the lower court's action so that the appellate court may effectively review the judgment for error. *Id.* "The test of their adequacy is 'whether they are sufficiently comprehensive and pertinent to the issue to form a basis for the decision[.]' " *State v. Clemmons* (1989), 58 Ohio App.3d 45, 46, 568 N.E.2d 705, 706, quoting 5A Moore, Federal Practice (2 Ed.1990) 52–142, Section 52.06[1].

█ The judgment entry at issue here expressly addresses two of the claims raised in the petition, the third regarding prosecutorial interference, and the thirteenth, regarding the ineffective assistance of appellate counsel before the Supreme Court. The trial judge thought these claims were not cognizable in postconviction actions. The entry vaguely addresses the six claims asserting ineffective assistance of trial counsel but gives no specific reason why the judge thinks they lack merit. As to the remaining claims, almost nothing is said. The entry contends that a "majority" of the claims in the petition are barred by *res judicata*, but it does not specify which of them are precluded on that basis. These findings and conclusions are insufficient to inform either appellant or this court of the basis for the lower court's decision and hence preclude effective appellate review.

We disagree with the state that this case is governed by *State ex rel. Carrion v. Harris* (1988), 40 Ohio St.3d 19, 530 N.E.2d 1330. There, the trial judge filed a short judgment entry merely stating that *all* of the petitioner's claims were barred by the doctrine of *res judicata*. The Supreme Court held that this entry was adequate to communicate the basis of the court's decision as to each claim because it was obvious that the judge considered all of them to be barred. Here, the judgment entry vaguely states that a *majority* of appellant's claims are barred by *res judicata*. We cannot tell which of the twenty-two are barred and which are not. Also, the court did not specify those portions of the record establishing the bar as is required by *Lester* and *Perry*. Accordingly, the judgment must be reversed and the cause remanded for more explicit findings and conclusions.

Although it is possible for us to address the merits of the judge's decision as to the two claims expressly considered in the judgment entry, we decline to do so. In *Lester, supra,* 41 Ohio St.2d at 56, 70 O.O.2d at 153, 322 N.E.2d at 659, the Supreme Court of Ohio held that the complete failure to enter findings and conclusions was reversible error. In one part of the decision, however, the court stated that the purposes of findings and conclusions "requir[e] that the trial court make a finding as to the substantive basis of *each claim* for relief contained in the petition." (Emphasis added.) *Id.* Justice Stern then remarked:

· "In addition, unless the trial court makes and files findings on all issues presented, appeals may well be piecemeal; the reversal of any dismissal could require the cause to be remanded to decide issues not considered by the trial court, while the reversal of the granting of relief upon one ground might be mooted by a later appeal upon some valid ground. A time-consuming series of appeals could well result which would be especially onerous for petitioners, since they continue to be imprisoned while claiming that their imprisonments are

unconstitutional. For these reasons, the findings of the trial court should reply to each of a petitioner's substantive claims." *Id.*

In *State v. Wilson* (1996), 110 Ohio App.3d 178, 673 N.E.2d 946, the petition for postconviction relief asserted four claims, but the trial court only addressed three out of the four in its findings and conclusions. The Second District Court of Appeals reversed the trial court's judgment and expressly refrained from expressing an opinion as to the merits of the first three claims as to which the court entered appropriate findings. We find persuasive the holding in *Wilson*, which implements the policy in *Lester* to avoid piecemeal appeals on the merits. When the trial court enters findings and conclusions sufficient to dispose of all twenty-two claims, we will address the merits all at once.

For these reasons, the third assignment of error has merit.

The seventh assignment of error and the third part of the fifth assignment of error challenge the substance of the court's decision on the merits of the claims. We will not consider these arguments until there is a judgment entry that encompasses all twenty-two claims.

C. Miscellaneous Matters

In the fourth assignment of error, appellant seems to argue that the trial court erred in impliedly overruling his motions to disqualify the Portage County Prosecutor's Office and for the appointment of a special prosecutor for the postconviction proceedings. Although this matter was also the subject of the second claim for postconviction relief in the petition, appellant's arguments in relation to the motion to disqualify are subtly different.

In the second claim for relief, appellant argues that the information attorney Aylward presumably shared with the prosecutor's office in 1989 could have given the state an unfair advantage in defending against appellant's propositions of law propounded to the Supreme Court. The requested remedy was a new trial. Because the trial court could have held that this claim was barred by *res judicata*,[3] we will refrain from commenting on this argument until the trial court has had the opportunity to fully express its opinion on the matter.

In the motion to disqualify, appellant argues that the information attorney Aylward presumably shared with the prosecutor's office in 1989 could give the state an unfair advantage in defending against appellant's twenty-two claims for postconviction relief, which are, for the most part, different from the propositions of law propounded to the Supreme Court. The requested remedy

---

3. See *State v. Roberts* (1982), 1 Ohio St.3d 36, 1 OBR 71, 437 N.E.2d 598 (errors amounting to violations of the appellant's constitutional rights that arose for the first time before the Supreme Court on direct appeal must be raised in the Supreme Court and may not be asserted in a petition for postconviction relief).

was disqualification. This argument is not barred by *res judicata* because it could not have been raised in the Supreme Court, for appellant could not have predicted in 1989 how the state might use Aylward's information against him eight years later in a postconviction relief action.

Regardless of the disposition of the second claim for relief, the trial court should have held a hearing on appellant's motion to disqualify. In *Kala v. Aluminum Smelting & Refining Co., Inc.* (1998), 81 Ohio St.3d 1, 688 N.E.2d 258, an attorney represented the plaintiff Kala in a wrongful discharge suit against a former employer, defendant Aluminum Smelting Company ("Aluminum Smelting"). At trial, the court entered a directed verdict for Aluminum Smelting, and Kala's attorney appealed. While the appeal was pending, Kala's attorney went to work for the firm representing Aluminum Smelting. Kala obtained new counsel and filed a motion to disqualify Aluminum Smelting's attorneys, which the appellate court granted. The Supreme Court allowed an interlocutory appeal and affirmed.

Writing for a plurality of the court, Justice Lundberg Stratton wrote:

"When an attorney leaves his or her former employment and becomes employed by a firm representing an opposing party, a presumption arises that the attorney takes with him or her any confidences gained in the former relationship and shares those confidences with the new firm." *Id.* at 5, 688 N.E.2d at 262.

The court then decided that the presumption may be rebutted by evidence showing (1) no substantial relationship between the subject of the prior matter and the matter at issue, (2) the side-switching attorney had no personal contact with or knowledge of the prior matter, or (3) the new law firm erected adequate and timely screens that prevented the flow of information from the quarantined attorney to other members of the law firm. See *id.* at 8–10, 688 N.E.2d at 265–266.

Obviously, there was a substantial relationship between the prior matter, the trial on Kala's wrongful discharge claim, and the matter at issue, the appeal from the directed verdict entered against Kala on his wrongful discharge claim. Kala's attorney obviously had personal contact with the trial of the wrongful discharge claim, for he personally represented Kala in court. The case turned on whether the new firm erected an adequate "Chinese wall" to prevent Kala's former attorney from sharing confidences with the new firm that might be used against him in the appeal. Despite rather extensive security measures, the court decided that the new firm had not erected adequate screens.[4] *Id.* at 14, 688 N.E.2d at 268.

---

**4.** The main problem seemed to have been that Kala's former attorney was preparing Kala's appeal at the same time that he was negotiating his position with the new firm. It seems that

 In the case before us, attorney Aylward "switched sides" and went to work for the Portage County Prosecutor's Office at a time when appellant's case was in the Supreme Court on direct appeal. Pursuant to *Kala,* there is a presumption that attorney Aylward shared information with his new colleagues that could have been used against appellant in the matter at issue—the postconviction relief proceeding. Under these circumstances, the trial court must hold a hearing and allow the state the opportunity to rebut that presumption. *Id.* at syllabus.

For these reasons, the fourth assignment of error has merit.

 In the first part of the fifth assignment of error, appellant asserts that the statutory procedure for obtaining postconviction relief is not an effective remedy for alleged violations of federal constitutional rights. The argument is designed to be made in an original action for habeas corpus and has no place in a direct appeal from the dismissal of a petition for postconviction relief.

Historically, the Ohio Supreme Court took a very narrow view of the writ of habeas corpus, holding repeatedly that the writ would not lie where errors at trial violated the prisoner's constitutional rights because such errors could be raised on direct review. *E.g., Ex parte Bushnell* (1859), 9 Ohio St. 77, 182–183; *Yutze v. Copelan* (1923), 109 Ohio St. 171, 142 N.E. 33; *Spence v. Sacks* (1962), 173 Ohio St. 419, 421–422, 20 O.O.2d 45, 46–47, 183 N.E.2d 363, 364–365; *Perry v. Maxwell* (1963), 175 Ohio St. 369, 25 O.O.2d 273, 195 N.E.2d 103.

In May 1965, the Supreme Court of the United States skirted the question whether the Due Process Clause requires the states to provide some postconviction mechanism besides an appeal by which prisoners could attack their convictions on federal constitutional grounds. *Case v. Nebraska* (1965), 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422. Justice Clark stated in a concurring opinion that the court had ruled as early as 1949 that the states must afford their prisoners some " 'clearly defined method by which they may raise claims of denial of federal rights.' " *Id.* at 337, 85 S.Ct. at 1487, 14 L.Ed.2d at 423 (Clark, J., concurring), quoting *Young v. Ragen* (1949), 337 U.S. 235, 239, 69 S.Ct. 1073, 1074–1075, 93 L.Ed. 1333, 1336–1337.

In response to Justice Clark's comments, the Ohio Supreme Court began a policy of allowing prisoners to assert such claims by way of habeas corpus. See *Freeman v. Maxwell* (1965), 4 Ohio St.2d 4, 5–6, 33 O.O.2d 2, 3, 210 N.E.2d 885,

---

the attorney should have disclosed the possibility of his move to his client and given Kala the opportunity to obtain substitute counsel for the appeal. Nothing the new firm did after the move could rectify the side-switching attorney's unprofessional conduct before it. Justice Douglas dissented, arguing that it was unfair to disqualify the new law firm for conduct over which it had no control.

886–887. See, also, *Merritt v. Koloski* (1965), 4 Ohio App.2d 145, 33 O.O.2d 199, 211 N.E.2d 926. The number of habeas corpus petitions immediately swelled to an intolerably burdensome level, and in July 1965, the General Assembly enacted the Postconviction Remedy Act to relieve the strain. Am.Sub.S.B. No. 383, 131 Ohio Laws 684. An uncodified section of the Act states its purpose as follows:

"This act is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health and safety. The reason for such necessity lies in the fact that habeas corpus petitions proceedings alleging violation of constitutional rights have increased in the courts to such an extent that a new procedure appears to be the best method of protecting constitutional rights of individuals and, at the same time, providing a more orderly method of hearing such matters. Therefore, this Act shall go into immediate effect." Am.Sub.S.B. No. 383, Section 2, 131 Ohio Laws 1610, 1611.

In October 1965, the Ohio Supreme Court held in *Freeman v. Maxwell, supra,* that the new statutory procedure for postconviction relief constitutes an adequate remedy in the ordinary course of law so that the extraordinary remedy of habeas corpus would thereafter be denied.

Appellant essentially challenges the holding in *Freeman v. Maxwell,* arguing that the statutory procedure as interpreted by the courts places so many procedural requirements upon petitioners that the whole process is a "sham" and not adequate to correct constitutional violations. But this portion of the fifth assignment does not allege an error that we have the power to review at this time.

Parenthetically, we do not share appellant's rather dismal opinion of the efficacy of the postconviction system. Although rare, there are instances where postconviction relief is appropriate. See *State v. Wilson* (1995), 73 Ohio St.3d 40, 652 N.E.2d 196; *State v. Byrd* (1980), 63 Ohio St.2d 288, 17 O.O.3d 184, 407 N.E.2d 1384; *State v. Cannaday* (Oct. 8, 1991), Franklin App. No. 91AP–474, unreported, 1991 WL 224179. These cases demonstrate that a petitioner's chance of success depends more on the merit of his claim than on the procedural obstacles he faces.

## III. CONCLUSION

The third and fourth assignments of error are sustained. The judgment is reversed, and the cause is remanded with instructions for the trial court to (1) hold a hearing on appellant's motion to disqualify the Portage County Prosecutor's Office and to appoint a special counsel in the postconviction matter, and (2) enter a supplemental judgment containing individualized findings of fact and

conclusions of law as to each of appellant's twenty-two claims and indicating the portions of the record that establish the *res judicata* bar where appropriate.

*Judgment accordingly.*

CHRISTLEY, J., concurs separately.

FORD, P.J., concurs in judgment only.

CHRISTLEY, Judge, concurring.

I respectfully concur in judgment with the majority for the following reasons. In reference to the third assignment of error in which the majority concluded that the trial court had issued insufficient findings of fact and conclusions of law, I would have preferred that the majority attempted to give meaning to the judgment entry by presuming that all issues were *res judicata* except for those issues which the court specifically had addressed. At that point, we could have specifically analyzed all of the *res judicata* issues as well as the ones which were, in fact, addressed. However, in light of the fact that I agree with the end result of the reversal, the remand will enable the trial court to clarify its position on the *res judicata* issues.

In regard to the majority's analysis regarding the second claim for relief concerning the necessity of a hearing on appellant's motion to disqualify the prosecutor's office, I do not believe that *Kala v. Aluminum Smelting & Refining Co., Inc.* (1998), 81 Ohio St.3d 1, 688 N.E.2d 258, is as applicable as the majority implies. I note that in footnote 3 of *Kala*, the Supreme Court of Ohio acknowledges the American Bar Association Model Rules of Professional Conduct as well as the distinction that the American Bar Association makes between government lawyers and private lawyers in matters of disqualification. *Kala* at 7–8, 688 N.E.2d at 264, fn. 3. Moreover, while I am not in disagreement that a hearing was probably required, I do not necessarily believe that *Kala* is dispositive of the outcome of that hearing. Specifically, I am still not convinced that when a government attorney is involved, there is the same presumption that applies when there is a private attorney, as in *Kala.*

With the exception of the above issues, I concur in the balance of the opinion and the judgment of the majority.