JOURNAL ENTRY AND OPINION
Defendant-appellant, Amanda Slagter, appeals the judgment of the Cuyahoga County Court of Common Pleas dismissing her petition for postconviction relief. Appellant contends that the trial court erred in finding that her petition was untimely filed and that the issues raised in her petition were barred by the doctrine of res judicata.
At 5:06 p.m. on October 10, 1998, the Solon Police Department received a 911 call for assistance at 6656 Duneden Avenue. The caller indicated that a person had expired at this address. Responding to the call, Solon Police Officer Joseph Veto observed the body of twenty-five-year-old Kevin Wilson in the bathtub. It was subsequently determined that Kevin had died between 6:00 a.m. and 9:00 a.m. that day of an asthma attack caused by an overdose of Ecstasy, a meta-amphetamine.
Appellant testified at trial that on the evening of October 9, 1998, Kevin invited her to stay at his parents' house. She and Kevin gathered her things from the apartment where she had been staying and packed them in six backpacks, several of which belonged to Kevin. They then went to the Flats, to Kinko's and, finally, to a bar in Solon. Appellant admitted that she and Kevin took a few pills during this time.
The couple went to sleep at the home of Kevin's parents at approximately 4:00 a.m. Appellant testified that she woke around 4:00 p.m. on October 10, 1998, and, believing that Kevin was asleep, got up and let her dog outside. She then called a friend and went to wake Kevin. Unable to rouse him, she dragged him into the shower, where she attempted to revive him. She then called 911.
Officer Veto testified that after questioning appellant, he ordered her to leave the home so that the premises could be examined by the coroner. When appellant asked to remove her personal property from the home, Officer Veto informed her that the police would have to examine anything that she removed from the home. Appellant testified that since some of the backpacks she had used belonged to Wilson, she brought six bags to the bottom of the stairs, expecting that she would be able to sort out the items that did not belong to her during the police officers' inspection.
Officer Veto testified that he asked appellant to open the backpacks. He observed clothing in the first bag. Appellant then unzipped the second backpack. As she was closing it, Officer Veto asked for a closer inspection. Upon inspection, he observed two clear plastic bags containing approximately 1600 grams of hallucinogenic mushrooms. Appellant testified that she was shocked to discover that the bag contained mushrooms and denied that the drugs belonged to her.
On December 15, 1998, appellant was indicted on one count of possession of more than fifty times the bulk amount of psilocybin (psychedelic mushrooms), in violation of R.C. 2925.11, and one count of possession of criminal tools, in violation of R.C. 2923.24.
Prior to trial, appellant moved to suppress the evidence of the mushrooms but the trial court denied appellant's motion.
The issue at trial was whether appellant had the mens rea necessary to establish possession of the mushrooms. Appellant claimed in her defense that she was unaware of the existence of the mushrooms and had mistakenly believed the backpack contained some of her possessions.
Lacking direct evidence of appellant's mental state, the State presented circumstantial evidence to infer appellant's knowledge of the mushrooms. Among this circumstantial evidence was testimony relating to cellular telephone records subpoenaed by the State. The records showed that Kevin owned two cell phones. Other evidence showed that appellant had a cell phone on her person at the Wilson home. Although he was not present at the Wilson home until October 11, 1998, and therefore had no personal knowledge, Detective Ross Faranda testified for the State that both cell phones were in the Wilson home at the time of Kevin's death. He admitted, however, that neither phone was ever recovered by police. Detective Faranda testified that there were dozens of calls made from one of the two cell phones between the time that Kevin died and 4:00 p.m., when appellant allegedly woke up.
In light of this testimony, the thrust of the State's argument at trial was that appellant had lied about the events of the day. According to the State, appellant knew Kevin was in dire straits long before seeking aid but delayed calling for help in order to get the mushrooms out of the house to protect her investment in them. According to the State, the dozens of telephone calls contained in the cell phone records were made by appellant to transact drug deals or to arrange for removal of the mushrooms from the home.
Throughout the State's closing and final arguments, the prosecutor referred to four large poster boards placed in front of the jury. The boards detailed the time of each cellular telephone call made between 6:00 a.m. and 4:00 p.m. on October 10, 1998, but did not contain any information regarding the actual numbers called or roaming charges assessed for some of the calls. The cellular phone records themselves were not made an exhibit at trial.
Appellant's trial counsel never filed a motion for discovery and, consequently, did not obtain or investigate the cell phone records prior to trial. Significantly, although the cellular telephone records contained exculpatory information demonstrating that one of the cellular phones was not in the Wilson home at the time of Kevin's death, the State never provided a copy of the cellular telephone records to defense counsel.
To support her claim that she lacked knowledge of the contents of the backpack in which the mushrooms were found, appellant attempted to present the testimony of James Fambro, Kevin's best friend, who would have testified at trial that Kevin owned the mushrooms, the backpack containing the mushrooms and the two cellular phones. The trial judge excluded Fambro's testimony, however, ruling that it was unfairly prejudicial to the State.
Appellant was convicted of drug possession and sentenced to an eight-year prison term and a $15,000 fine. She was acquitted of the charge of possession of criminal tools.
After trial, appellant's new counsel repeatedly asked the prosecutor for a copy of the cellular telephone records, but the prosecutor refused to provide the records to him. On August 13, 1999, when the transcripts of the trial became available, appellant's new counsel learned the telephone numbers associated with the two cellular phones owned by Kevin Wilson. He then subpoenaed the records regarding calls made by these phones on October 10, 1999.
According to information provided by GTE in response to the subpoena, Kevin Wilson's subscription for his two cellular phones provided that roaming charges would be applied whenever a call was made from one of the phones while the phone itself was outside the home coverage area. The home coverage area for Wilson's phones covered all of Cuyahoga County and several neighboring counties. The Wilson residence, which is in Solon, is clearly within the coverage area. Therefore, no call made from that residence on one of Kevin's cellular phones would incur a roaming charge.
The cellular records obtained by appellant's new counsel revealed five calls made on October 10, 1998 by the cellular phone associated with the telephone number 215-440-5869 to which a roaming charge was assessed. The calls were made beginning at 2:33 p.m. and continued through almost 6:00 p.m. — when appellant had already been in police custody for nearly an hour. Because roaming charges were assessed on these calls, the cellular phone from which these calls were made could not have been in Solon, which was well within the home coverage area for Wilson's phones. The records also indicated that at least one of the telephone calls that appellant allegedly made during the time in question was made to Wilson's other phone. Accordingly, the cellular phone records demonstrated that, contrary to Detective Faranda's testimony, one of the two cellular phones was not in Wilson's house on October 10, 1998. Furthermore, the records relating to the other cellular phone, with phone number 216-347-3265, demonstrated that it went unused during the time that appellant testified she slept.
Appellant appealed her conviction, raising three assignments of error. Appellant argued on appeal that 1) the trial court erred in denying her motion to suppress; 2) the trial court erred in granting the State's motion in limine to exclude the testimony of Kevin's friend, James Fambro; and 3) she was denied effective assistance of counsel because her attorney failed to make a formal discovery request, thereby failing to obtain the cellular phone records that would have established that one of the phones owned by Wilson was not at his home at the time of his death, and was generally unprepared to represent her.
This court, in a 2-1 decision, affirmed appellant's conviction. We ruled that the warrantless search of the backpack was justified because of exigent circumstances. We also ruled that the trial court did not abuse its discretion in granting the State's motion in limine to exclude the testimony of James Fambro.
With respect to appellant's ineffective assistance of counsel claim, we noted that appellant had attached affidavits which contained evidence outside the original trial record. We stated, "With regard to the evidence dehors the record, we cannot find trial counsel ineffective from these documents; the appropriate vehicle for their consideration is a motion for relief from judgment pursuant to R.C. Chapter 2953."
Finally, although the issue was not raised by the parties, we vacated the sentence and ordered the case remanded for resentencing because the trial court failed to engage in the analysis required by R.C. 2929.14
before imposing sentence. Upon remand, the trial court sentenced appellant to a three-year prison term.
On February 14, 2000, while her appeal was pending, appellant filed a petition for postconviction relief in the trial court. Appellant's petition requested that the trial court vacate her conviction or grant a new trial on the basis of newly discovered evidence, prosecutorial misconduct and ineffective assistance of counsel.
Appended to appellant's petition was an affidavit from her appellate counsel, Joseph J. Jacobs, Jr. In his affidavit, Jacobs stated:
 1. Affiant states I am the counsel of record for Defendant-Appellant Amanda Slagter, in the Eighth Appellate District Court case captioned State v. Slagter, with designated Case No. 76459;
 2. Affiant further states that I was restricted to a very limited role as co-counsel in Defendant Slagter's criminal defense in Cuyahoga County Criminal Division Case captioned State v. Slagter, which was designated Case No. 370090;
* * *
Jacobs' affidavit then described his observations regarding trial counsel's inadequate trial preparation and representation. With respect to the cellular phone records, he stated:
 7. Affiant further states that during the trial of the above-referenced case and immediately after the jury was sent to deliberate, I was able to see the phone records of Kevin Wilson that the state so heavily relied upon in their case against Defendant-Appellant Slagter for the first time;
 8. Affiant further states that the actual phone records revealed more detail than the poster boards utilized by the Prosecutor in the State's closing;
 9. Affiant further states that immediately upon reading the list of the actual phone numbers that were called by the second phone, whose number was 216-440-5869, I noticed that among those numbers was the number of the other phone that Kevin Wilson owned, with phone number, 216-347-3265;
 10. Affiant further states that upon noticing this correlation of numbers, I asked Prosecutor Eleanor Hilow why she hadn't provided Defendant's Trial Counsel Timothy Koral with a copy of what I considered exculpatory evidence;
 11. Affiant further states in response to my question she stated to me that, It would have been a much different trial if he had filed a Motion for Discovery.;
 12. Affiant further states that since the time of that conversation I have asked for a copy of those phone records, but Prosecutor Hilow has continued her refusal to forward them;
 13. Affiant further states that on or about August 13, 1999, the transcripts of the trial of this matter became available;
 14. Affiant further states only then did the actual phone numbers associated with those cell phones become known to me;
 15. Affiant further states that on or about August 26, 1999, I subpoenaed GTE's Custodian of Records, and on September 7, 1999, I received from GTE the actual phone records of Kevin Wilson's two cell phones;
 16. Affiant further states that I was unavoidably prohibited from obtaining these records until that time due to Prosecutor Hilow's continued refusal to release them;
* * *
On March 8, 2000, twenty-three days after appellant's petition was filed and docketed, the State filed a motion to strike defendant's petition for postconviction relief as a sham and false under Civ.R. 11, or, in the alternative, motion to disqualify attorney Joseph J. Jacobs, Jr., as counsel for defendant and motion for extension of time to file reply to petition.
The state argued that Jacobs' affidavit in support of the petition, in which he averred that he was restricted to a very limited role as co-counsel in appellant's trial was inconsistent with the statement in his brief that though Defendant Slagter was accompanied at times by another attorney, Joseph J. Jacobs, Jr., Esq., his role was restricted to that of spectator. The State argued that Jacobs could have been either a spectator at trial or co-counsel, but not both. The State argued that in light of this apparent contradiction, the instant petition cannot be relied upon by this court as anything but a sham or false document, and moved for dismissal of appellant's petition pursuant to Civ.R. 11.
The trial court granted the State's motion without a hearing. In a journal entry filed on April 26, 2000, the trial court ordered:
 Motion of State to strike is granted. Court grants State's motion to strike post-conviction relief petition, filed February 14, 2000. Therefore, State's motions to disqualify attorney Joseph Jacobs and/or for extension of time to reply to petition are denied as moot. Attorney Joseph Jacobs and the defendant are further advised by this court that Mr. Jacobs may not refile the petition for post-conviction relief with a supportive affidavit from Joseph Jacobs.
 Doing so violates the Code of Professional Responsibility, and will result in disqualification of Mr. Jacobs from all proceedings regarding this case in this court, pursuant to the Rules of Superintendence of the Governance of the Bar, per the Supreme Court of Ohio.
On June 16, 2000, appellant refiled her petition for postconviction relief, without an affidavit from Joseph Jacobs, Jr. Appellant again sought relief on the basis of newly discovered evidence, prosecutorial misconduct and ineffective assistance of counsel.
On June 26, 2000, the State filed a motion to dismiss appellant's petition, arguing that it was untimely filed and that appellant's claims were barred by the doctrine of res judicata.
On September 12, 2000, the trial court granted the State's motion to dismiss, holding that the petition was untimely filed and appellant's claims were barred by the doctrine of res judicata. In its order, the trial court noted that the trial transcript in appellant's direct appeal was filed with this court on August 20, 1999, and, therefore, pursuant to R.C. 2953.21(A)(2), a timely petition for postconviction relief was due on or before February 16, 2000. The trial court noted further that it had granted the State's motion to strike appellant's first petition and held that with respect to appellant's second petition, filed on June 16, 2000, appellant had not satisfied the provisions of R.C. 2953.23(A), which sets forth the circumstances under which a trial court may consider a petition filed after the expiration of the time-period set forth in R.C. 2953.21(A)(2).
The trial court also held that appellant's claims were barred by the doctrine of res judicata because Defendant-petitioner attempts to raise the same issues in her postconviction petitions that have been raised on direct appeal. The trial court found that appellant had not presented competent, relevant and material evidence dehors the record to overcome the application of the doctrine of res judicata.
Appellant timely appealed, raising two assignments of error for our review:
 I. (A) THE TRIAL COURT ERRED IN DISMISSING DEFENDANT-APPELLANT'S PETITION AS NOT TIMELY FILED WHEN IT HAD BEEN FILED WITHIN THE PERIOD SET FORTH IN OHIO REVISED CODE S2953.21, AND HAD BEEN RE-FILED IN ACCORDANCE WITH THE TRIAL COURT'S PREVIOUS ORDER.
 (B) THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT-APPELLANT FAILED TO SATISFY THE PROVISIONS OF OHIO REVISED CODE S2953.23, WHICH SETS FORTH THE CIRCUMSTANCES UNDER WHICH A PETITION FOR POSTCONVICTION RELIEF MAY BE FILED BEYOND THE STATUTORY PERIOD FOR FILING.
 II. THE TRIAL COURT ERRED IN FINDING THAT THE CLAIMS RAISED BY DEFENDANT-APPELLANT IN HER PETITION WERE BARRED BY THE DOCTRINE OF RES JUDICATA.
In her first assignment of error, appellant asserts that the trial court erred in dismissing her petition as not timely filed. Appellant contends that the only reasonable interpretation of the trial court's order that Mr. Jacobs may not refile the petition for postconviction relief with a supportive affidavit from Joseph Jacobs was that he could bring the petition into compliance and then refile it. According to appellant, the amendment or refiling would, in accordance with Civ.R. 15(C), relate back to the date of the original filing, and, thus, be timely.
Appellant also contends that even if her petition were filed beyond the one-hundred-eighty day period specified by R.C. 2953.21(A), her allegations, affidavits, exhibits and excerpts of testimony satisfied the provisions of R.C. 2953.23(A).
We need not reach these issues. The dismissal of appellant's second petition as untimely is inextricably linked to the dismissal of her first petition, which was timely filed. In short, if the first petition had not been dismissed, there would have been no need for appellant to refile her petition. Thus, as an initial matter, we consider whether the first petition was properly dismissed. We hold that the trial court committed plain error in dismissing appellant's first, timely-filed petition.
R.C. 2953.21(D) states: Within ten days after the docketing of the petition, or within any further time that the court may fix for good cause shown, the prosecuting attorney shall respond by answer or motion. Despite the reliance by the State at oral argument on State v. Skelnar (1991), 71 Ohio App.3d 444, it is apparent that the State must respond to a petition for postconviction relief within ten days after the petition is filed. Skelnar merely stands for the proposition that, although the statute says the State shall respond (emphasis added), the State need not actually respond if it decides not to do so. If the state deigns to respond at all, it must do so before the prescribed deadline, or within any further time as may be affixed by the court. State v. Wiles (1998),126 Ohio App.3d 71, 77.
We are aware of the cases, including several from this court, which hold, in light of Skelnar, supra, that the time period to respond to a petition for postconviction relief set forth in R.C. 2953.21(D) is directory, not mandatory, meaning that the time period in 2953.21(D) is not rigid. State v. Halliwell (1999), 134 Ohio App.3d 730. See, also, State v. Bonnell (Aug. 27, 1998), Cuyahoga App. Nos. 69835/73177; unreported; State v. Hamblin (Dec. 15, 1994), Cuyahoga App. No. 66556, unreported. These cases, however, misconstrue Skelnar.
In Skelnar, the Ninth District Court of Appeals stated:
 R.C. 2953.21(D), the provision setting forth the time period for the state's response is directory rather than mandatory. An appellant cannot compel the prosecutor to respond to his petition, but, rather, should resort to requesting the trial court to proceed on his motion without the prosecutor's response. Id. (Citations omitted).
Thus, Skelnar merely stands for the proposition that the State cannot be compelled to respond to a petition for postconviction relief.
Despite the characterization of R.C. 2953.21(D) as directory, Skelnar does not stand for the proposition that the ten-day time limit set forth in the statute is flexible. First, Skelnar involved a case where the State never responded to the defendant's petition for postconviction relief. Thus, the Skelnar court did not address the issue of an untimely response by the State; it considered only whether the State is required to respond to a petition in the first instance. Moreover, although the provision is directory, rather than mandatory, to the extent that the State's failure to comply will not deprive a trial court of jurisdiction to consider a petition for postconviction relief, see In re Davis (1999), 84 Ohio St.3d 520, the language of the statute indicates that if the State responds at all, it must do so within ten days after the petition was filed or obtain leave of court to respond after that time.
Here, the State did not respond to appellant's petition within ten days after appellant's petition was docketed, nor did it obtain leave of court to file its response thirteen days out of rule. Accordingly, the State's response was untimely and the trial court erred in considering it. Moreover, the trial court's error was clearly not harmless: the court dismissed appellant's petition on the basis of the State's motion without considering the merits of the petition. Accordingly, we order the State's motion to strike appellant's petition stricken, reverse the trial court's judgment dismissing appellant's first petition for postconviction relief and remand for consideration of appellant's petition.
It is well-settled that, regardless of whether or not the State responds to a petition for postconviction relief, R.C. 2953.21(C) requires the court to sua sponte analyze the petition. See, e.g., State ex rel. Manning v. Montgomery (1988), 39 Ohio St.3d 140; State v. Darden (1989), 64 Ohio App.3d 691, 694; State v. Jordan (Aug. 11, 1989), Trumbull App. Nos. 3893 and 3972, unreported. Accordingly, on remand, the trial court must consider appellant's first petition for postconviction relief without the benefit of a response from the State.
With respect to the seemingly inconsistent statements of Joseph Jacobs, Jr., in appellant's petition regarding his role at appellant's trial, we note that Civ.R. 11 provides:
 Every pleading, motion, or other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name * * *. * * * The signature of an attorney * * * constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a document is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the document had not been served. * * * (Emphasis added.)
We fail to see how without conducting a hearing or taking any evidence, the trial court could have determined that Jacobs' statements regarding his role at appellant's trial were made with the intent to defeat Civ.R. 11. It is apparent that instead of determining Jacobs' subjective intent regarding his statements, the trial judge chose to rely strictly upon the State's opinion regarding why Jacobs made the seemingly contradictory statements. The question of the frivolity of a pleading, however, requires evidence attesting to the attorney's subjective reasons for filing the pleading rather than simply another party's objective, conclusory opinion as to the reasons. Roark v. U.S. Truck Trailer Sales, Inc. (Nov. 19, 1998), Cuyahoga App. No. 74809, unreported, citing Toth v. Toth (1994), 94 Ohio App.3d 561, 570-571.
Accordingly, the trial court is instructed upon remand to conduct a hearing to determine whether Jacobs' intent in making the statements was to defeat the purpose of Rule 11, or whether, as is more likely, the statements were merely negligently made because, as Jacobs averred in his brief in opposition to the State's motion to strike, the two statements, although seemingly contradictory, are actually not inconsistent in that even though he was co-counsel, his role was limited to that of a spectator at Defendant's table, and he was not permitted to control any aspects of the trial.
In her second assignment of error, appellant asserts that the trial court erred in finding that the claims raised in her second petition are barred by the doctrine of res judicata. Because appellant's first and second petitions for postconviction relief raise the same claims, we address this assignment of error.
R.C. 2953.21, which governs petitions for postconviction relief, provides in pertinent part:
 (A)(1) Any person convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
* * *
 (C) * * * Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of court, and the court reporter's transcript. * * * If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.
Under the doctrine of res judicata, constitutional issues cannot be considered in postconviction proceedings brought pursuant to R.C. 2953.21
where they have already been or could have been fully litigated by the defendant, either before his or her judgment of conviction or on direct appeal from that judgment. State v. Perry (1967), 10 Ohio St.2d 175, paragraph seven of the syllabus; State v. McCullough (1992),78 Ohio App.3d 587, 591. Issues properly raised in a petition for postconviction relief are those which could not have been raised on direct appeal because the evidence supporting such issues is outside the record. State v. Milanovich (1975), 42 Ohio St.2d 46, 50; State v. Bates (Jan. 21, 1999), Cuyahoga App. No. 75093, unreported. If an issue has, or should have been, raised on direct appeal, the trial court may dismiss the petition on the basis of res judicata. State v. Spisak (Apr. 13, 1995), Cuyahoga App. No. 67229, unreported. To overcome the res judicata bar, the evidence must show that the petitioner could not have appealed the constitutional claim based on the information in the original trial record. State v. Combs (1994), 100 Ohio App.3d 90, 97.
Appellant raises three claims in her petition: 1) newly discovered evidence; 2) prosecutorial misconduct; and 3) ineffective assistance of counsel. With respect to her claim of newly discovered evidence, appellant claims that after her conviction, she learned of exculpatory evidence contained in the cellular telephone records that would have destroyed the State's argument against her. Accordingly, appellant contends, her trial counsel's failure to obtain and review the records prior to trial deprived her of her constitutional right to effective assistance of counsel. Appellant also proffers additional testimony from James Fambro, contending that if he had been allowed to testify, the jury would not have rendered a guilty verdict. Appellant asserts that in light of this newly discovered evidence, the trial court should vacate the judgment against her.
Any issue regarding the testimony of James Fambro was raised or could have been raised on direct appeal and, therefore, is barred by the doctrine of res judicata. Appellant's claim regarding the newly discovered exculpatory evidence in the cellular telephone records, however, is not barred by the doctrine. Although the prosecutor referred to the records at trial, the records themselves were never made part of the trial record. Accordingly, the evidence to support appellant's claim is outside the record, and, therefore, the claim could not have been raised on direct appeal. Indeed, although appellant appended the cellular telephone records to her brief on appeal, this court granted the State's motion to strike appellant's exhibits pursuant to App.R. 9 because they were not part of the original trial record. Thus, it is apparent that appellant's claim is not barred by the doctrine of res judicata.
Appellant's claim that the prosecutor improperly withheld favorable evidence is supported by an affidavit from Joseph Jacobs in which he avers that after appellant's conviction, he discovered that obviously exculpatory information was contained in the cellular telephone records used by the State at trial but not disclosed to appellant. He also avers that when he asked the prosecutor immediately after the trial why she had not disclosed the exculpatory information, she responded, It would have been a much different trial if he had filed a motion for discovery. This competent, relevant and material evidence regarding appellant's claim of prosecutorial misconduct is obviously not contained in the original trial record and, therefore, the claim could not have been raised on direct appeal. Moreover, appellant's claim of prosecutorial misconduct necessarily requires review of the cellular telephone records which, as discussed above, were not part of the trial record. Accordingly, the claim is not barred by res judicata.
Likewise, appellant's claim of ineffective assistance of counsel is supported by affidavits containing information outside the original trial record. For example, appellant's affidavit avers that her trial counsel never informed her that she would receive a mandatory prison term if convicted, never informed her of a plea offer by the State and spent only fifteen minutes with her prior to trial preparing for trial. Clearly, this information is not in the original trial record and, thus, the claim could not have been raised on direct appeal. Indeed, although appellant attempted to raise this claim in her direct appeal, this court specifically found that the evidence contained in the affidavits was outside the record and stated, With regard to the evidence dehors the record, we cannot find trial counsel ineffective from these documents; the appropriate vehicle for their consideration is a motion for relief from judgment pursuant to R.C. Chapter 2953. Accordingly, this claim is not barred by the doctrine of res judicata.
Appellant's first assignment of error is overruled as moot; appellant's second assignment of error is sustained in part and overruled in part.
This cause is reversed and remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellant recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J., CONCURS IN JUDGMENT ONLY; and ANN DYKE, J., DISSENTS WITH DISSENTING OPINION.